UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| UNITED STATES OF AMERICA, | ) | CR. 11-40016-01-KES |
| --- | --- | --- |
| Plaintiff, | ) | |
| vs. | ) | ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL |
| RONALD BONESTROO, a/k/a "rbonestroo@sio.midco.net," | ) | |
| Defendant. | ) | |

Defendant, Ronald Bonestroo, moves pursuant to Federal Rule of Criminal Procedure 29(a) for a judgment of acquittal as to the charge of attempted commercial sex trafficking in violation of 18 U.S.C. §§ 1591 and 1594(a). Bonestroo contends that 18 U.S.C. §§ 1591 and 1594(a) do not apply to purchasers of sex acts, but rather only apply to the seller or the pimps of children. Docket 53. The government resists this motion and argues that there was sufficient evidence for a reasonable jury to conclude that Bonestroo violated the statutes. Docket 59. For the reasons stated below, Bonestroo's motion is granted.

## BACKGROUND

Immigration and Customs Enforcement (ICE) began an undercover sting operation in Sioux Falls, South Dakota, in February of 2011. Docket 53 at 1. ICE used a number of web sites to place advertisements that offered to provide minors for sexual acts in exchange for money. Bonestroo responded to one of

the advertisements. Bonestroo exchanged numerous emails with an undercover agent and asked for more information about price, the age of the girls, and the legitimacy of the ad. He asked repeatedly whether the undercover agent was a law enforcement officer. The agent claimed to be the boyfriend of the three minor girls' mother. Eventually, Bonestroo made telephone contact with another undercover agent involved in the sting, and they set up a time and place to meet to exchange money for sexual acts with the minors. Bonestroo left his Sioux Falls home, traveled to an ATM and withdrew $200, and drove to the predetermined safe house where law enforcement officers were waiting. After Bonestroo showed the agent the money, he was arrested.

On March 2, 2011, Bonestroo was indicted on one count of attempted commercial sex trafficking of a child. Docket 14. In a Superseding Indictment the Grand Jury charged that:

> On or about February 10, 2011, in the District of South Dakota and elsewhere, Ronald Bonestroo, a/k/a "rbonestroo@sio.midco.net", defendant herein, knowingly, in and affecting interstate commerce, attempted to recruit, entice and obtain a person who had not attained the age of 18 years, and knew that the person would be caused to engage in a commercial sex act; all in violation of 18 U.S.C. §§ 1591 and 1594(a).

Docket 21. After a one-day jury trial, Bonestroo was convicted of attempted commercial sex trafficking of a child. He made an oral motion for judgment of acquittal that the court took under advisement. Docket 53.

Bonestroo does not contest the evidence offered by the government during trial. Instead, Bonestroo alleges that the statute under which he was prosecuted does not apply to the purchaser of a sex act; but rather, to the buyer or seller of human beings within the hierarchy of a human trafficking scheme. Bonestroo claims that the plain language of the whole text of 18 U.S.C. § 1591 and its legislative history and congressional intent support his conclusion that this statute applies to those who act as pimps of children, but not the "johns."[1]

## DISCUSSION

Federal Rule of Criminal Procedure 29 provides that the court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). Even after the jury has returned a guilty verdict the court can set aside the verdict and order an acquittal. Fed. R. Crim. P. 29(c)(2). "A conviction will be reversed only if, after viewing the evidence most favorably to the verdict and giving the government the benefit of all reasonable inferences, no construction of the evidence supports the jury's verdict." *United States v. Worman*, 622 F.3d 969, 977 (8th Cir. 2010) (citation omitted). The main inquiry is whether there is sufficient evidence for a reasonable jury to find the defendant guilty beyond a reasonable

---

[1] A john is "a prostitute's client." Merriam-Webster's Collegiate Dictionary 631 (10th ed., 1999).

doubt. *United States v. Reddest*, 512 F.3d 1067, 1070 (8th Cir. 2008) (citations omitted). Traditionally, the court will uphold the jury's verdict even " '[i]f the evidence rationally supports two conflicting hypotheses[.]' " *United States v. Serrano-Lopez*, 366 F.3d 628, 634 (8th Cir. 2004) (citations omitted).

There is little case law on the issue of whether § 1591 applies to those who purchase sex acts with a minor and what constitutes human trafficking under the statute. One court has specifically found that § 1591 does not apply to johns, and the defendant in that case was caught in the same sting as Bonestroo. *See United States v. Jungers*, No. 11-40018, 2011 WL 6046495, *4 (D.S.D. Dec. 5, 2011) (concluding that the clear text of the statute and legislative history indicates that it only applies to buyers and sellers of human beings for profit, not to purchasers of sex acts with minors). At least one court has reached the opposite conclusion, albeit, without analysis. *See United States v. Mikoloyck*, No. 09-00036, 2009 WL 4798900, *7 (W.D. Mo. Dec. 7, 2009) ("Also, contrary to defendant's argument, 18 U.S.C. § 1591 clearly applies to those who attempt to purchase underage sex, not merely the pimps of actual exploited children."). In other similar cases, this specific issue was not raised by the defendant, there was no child involved, or the defendant was a pimp, not a john like Bonestroo.[2] "[O]n the questions of first impression or

---

[2] *United States v. Todd*, 627 F.3d 329, 337 n.4 (9th Cir. 2010) (Smith, J., concurring) ("With respect to children, section 1591 covers a wider range of conduct than 18 U.S.C. § 2423, which makes it a crime to knowingly transport

4

limited prior consideration by other courts, this court must be guided principally by the rules of statutory interpretation." *United States v. Beiermann*, 584 F. Supp. 2d 1167, 1174 (N.D. Iowa 2008).

## I. The Plain Language of § 1591

"The definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Liparota v. United States*, 471 U.S. 419, 424 (1985) (citation omitted). "The starting point in interpreting a statute is always the

---

a minor with the intent that the minor engage in prostitution. Again, section 1591 targets larger sex trafficking organizations."); *United States v. Evans*, 476 F.3d 1176, 1179 n.1 (11th Cir. 2007) ("Section 1591 does not criminalize all acts of prostitution (a vice traditionally governed by state regulation). Rather, its reach is limited to sex trafficking that involves children or is accomplished by force, fraud or coercion."); *United States v. Strevell*, 185 Fed. App'x 841 (11th Cir. 2006) (concluding that the interstate commerce element was satisfied and defendant's § 1591 conviction would stand); *United States v. Roberts*, 174 Fed. App'x 475 (11th Cir. 2006) (concluding that the government did not manufacture jurisdiction or entrap a defendant who was attempting to travel to engage a minor in a commercial sex act and attempting to induce a minor to engage in prostitution); *United States v. King*, 713 F. Supp. 2d 1207, 1218 (D. Haw. 2010) ("If subsections 1591(a)(1) and (a)(2) were to be viewed as separate offenses, then a pimp found to be in violation of 1591(a)(1) by engaging a victim in commercial sex in violation of the statute always would be subject to penalties provided by subsection (a)(2) by benefitting financially from the same crime as *commercial sex* is always for the purpose of financial benefit."); *United States v. Chappell*, No. 09-139, 2010 WL 1131474, *7 (D. Minn. Jan. 12, 2010) ("First, the regulated activity alleged here is the promotion of a minor's involvement in commercial sex acts, which is unquestionably economic in nature."); *United States v. Paris*, No. 06-64, 2007 WL 3124724, *8 (D. Conn. Oct. 24, 2007) ("[P]rocuring a woman to engage in a commercial sex act contributes to an interstate market in commercial sex, even when the procuring occurred intrastate.").

5

language of the statute itself." *United States v. Whiting*, 165 F.3d 631, 633 (8th Cir. 1999) (citation omitted). "If the intent of Congress can be clearly discerned from the statute's language, the judicial inquiry must end." *Id.* (citing *Citicasters v. McCaskill*, 89 F.3d 1350, 1354-55 (8th Cir. 1996)). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) (citations omitted). The general principle remains that if the statute's language is plain and clear in its context, then the plain language controls. *King v. Ahrens*, 16 F.3d 265, 271 (8th Cir. 1994) (citation omitted). If a term is not defined within the statute then its ordinary meaning is used. *United States v. Santos*, 553 U.S. 507, 511 (2008) (citation omitted).

In ascertaining the plain meaning of a statute, the Supreme Court has emphasized that the court must " 'consider not only the bare meaning' of the critical word or phrase" at issue, " 'but also its placement and purpose in the statutory scheme.' " *Holloway v. United States*, 526 U.S. 1, 6 (1999) (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)). The court should consider these terms in light of the "language and design of the statute as a whole." *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988) (citations omitted). It is also important that courts "not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and

policy." *U.S. Nat'l Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (citation omitted).

Section 1591 provides:

(a) Whoever knowingly–

(1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (l),

knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a). It is also a federal crime to attempt to violate section 1591: "Whoever attempts to violate section . . . 1591 shall be punishable in the same manner as a completed violation of that section." 18 U.S.C. § 1594(a). An attempt crime is complete when the person intends to commit the underlying offense and carries out some act which is a substantial step toward the commission of the crime. *United States v. Joyce*, 693 F.2d 838, 841 (8th Cir. 1982) (citations omitted).

The verbs that relate to Bonestroo's conduct as charged in the indictment (recruit, entice, or obtain) are joined by the disjunctive "or," in the

statute rather than the conjunctive "and," which suggests that the conduct required to complete the crime is any of the aforementioned verbs. At trial, "the government may prove and the trial judge usually instructs in the disjunctive form used in the statute . . . [p]roof of any one of the violations charged . . . in the indictment will sustain a conviction." *United States v. Klein*, 850 F.2d 404, 406 (8th Cir. 1988) (citations omitted). Thus, to satisfy the plain reading of the statute, the government need only show that Bonestroo knowingly enticed or recruited or obtained a child knowing he or she would be caused to engage in a commercial sexual act. *Cf. United States v. Pate*, 932 F.2d 736, 737 (8th Cir. 1991) ("The evidence would need only show that Pate used or carried the shotgun, not that he did both.").

Recruits, entices, and obtains are not defined in the statute. As a result, the court will apply their ordinary meaning. *See Santos*, 553 U.S. at 511. Although a bare reading of at least one of these three verbs may support a determination that § 1591 was meant to encompass purchasers of sex acts from minors, the entire language and design of the statute as a whole indicates that it is meant to punish those who are the providers or pimps of children, not the purchasers or the johns. *See United States v. Auginash*, 266 F.3d 781, 784 (8th Cir. 2001) ("While penal laws are to be construed strictly, 'they should not be construed so strictly as to defeat the obvious intention of the legislature.' ") (citation omitted).

The conduct that § 1591 seeks to punish is described through a series of verbs: someone who knowingly "recruits, entices, harbors, transports, provides, obtains, or maintains" a person under the age of 18 knowing that they "will be caused to engage in a commercial sex act." "The traditional canon of construction, *noscitur a sociis*, dictates that words grouped in a list should be given related meaning." *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 36 (1990) (internal quotation and citation omitted).

When the verbs in this list are viewed together and with their related meaning, it is evident that each verb represents a potential step in the process of engaging in a child sex trafficking business. The first step in the child sex trafficking business is to bring these children into the trafficker's control. These traffickers can "recruit" children by lying about the work they will be doing or "enticing" them into the sexual servitude enterprise by luring them with financial reward. Next the original trafficker may "harbor" or provide refuge to this trafficked child in preparation for sale or movement within the operation. Then the source trafficker will "transport" the child from his or her home community to a brothel, another trafficker, or another country. These children will then be "provided" to receiving traffickers, like distributors, brothel owners, or pimps who want to "obtain" the trafficked children for their own localized business, which can be connected to or independent from the original trafficking organization. Finally, a brothel, pimp, or sex trafficking

enterprise "maintains" these children as child prostitutes. Only after someone else has completed a combination of these steps within a sex trafficking chain, could a john like Bonestroo attempt to purchase sex with these children.

From this analysis it is apparent that each statutory verb within § 1591 describes a method of gaining control over the child victim or is a step in preparation for the end goal that the children "will be caused" to engage in commercial sex acts. The trafficking process described in this list stops short of the john; therefore, it does not reach Bonestroo.

Moreover, § 1591's placement within the Trafficking Victims Protection Act (TVPA), the statutes surrounding § 1591, and the relevant names of titles and chapters indicate that the statute is meant to reach those who control or move the children versus those who attempt to buy sexual acts from or with children. *See Massachusetts v. Morash*, 490 U.S. 107, 115 (1989) (stating "in expounding a statute, we [are] not . . . guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy."). The statute's title section is "Peonage, Slavery, and Trafficking in Persons," and the subchapter title is "Sex trafficking of children or by force, fraud, or coercion." 18 U.S.C. § 1591. Section 1591 is positioned between § 1590, "Trafficking with respect to peonage, slavery, involuntary servitude, or forced labor," and § 1592, "Unlawful conduct with respect to documents in furtherance of trafficking, peonage, slavery, involuntary servitude, or forced

labor." While "section and subchapter titles cannot alter the plain meaning of a statute; they can . . . assist in clarifying ambiguity." *United States v. May*, 535 F.3d 912, 916 (8th Cir. 2008) (internal quotations and citations omitted). The word trafficking used in the same context as the words peonage and slavery further indicates that the word refers to the systematic movement and buying and selling of people. In this sense, like peonage or slavery, trafficking is a form of servitude, which means the reach of the statute extends to the traffickers who habitually enslave children, not the one-time purchaser of the trafficked person's services.

The clear language of the statute indicates that the crime charged in § 1591 is the predicate conduct of obtaining the person, in this case a child, knowing that the child will be caused to engage in a sex act in the future. The statute was not intended to criminalize a defendant who engages in a sex act with a child. Congress clearly has shown that it knows how to reach and punish those who engage in the sex act itself with a child, and it did not explicitly do so in § 1591. *See* 18 U.S.C. § 2243 ("Whoever . . . knowingly engages in a sexual act with another person who . . . has attained the age of 12 years but has not attained the age of 16 years; and is at least four years younger than the person so engaging[.]"); *United States v. White Calf*, 634 F.3d 453, 456-57 (8th Cir. 2011) ("It is a federal crime for an Indian to 'knowingly engage[ ] in a sexual act with another person who . . . has attained the age of

11

12 years but has not attained the age of 16 years' so long as the act occurred in Indian country and such person 'is at least four years younger than the' Indian."). *See also* 18 U.S.C. § 2241(c); *United States v. Plumman*, 409 F.3d 919, 929 (8th Cir. 2005) (discussing the defendant's conviction under the aggravated sexual abuse statute). In § 1591, Congress outlawed the recruiting, enticing, or obtaining of a person and not the act of engaging in sex with a minor.

After considering the entire verbiage of the statute, titles, and surrounding statutes, the court finds that § 1591 does not apply to a john. While not necessary to the analysis, the court will also examine the legislative history of § 1591.

## II. Legislative History of the Trafficking Victims Protection Act

Both the government and Bonestroo allege that the legislative history behind the enactment of the TVPA support their interpretation of the statute. Bonestroo claims that the purpose of the act and legislative findings support the conclusion that § 1591 only pertains to those who buy and sell human beings, not those who attempt to engage in a sex act with a minor. The government counters and states that there is clear legislative history that § 1591 pertains to those on the demand side of the sex trafficking industry, like Bonestroo.

Congress expressed the purposes of the TVPA to be to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Trafficking Victims Protection Act of 2000, Pub. L. No. 106-386, § 102(a), 114 Stat. 1464 (2000) (codified as amended at 18 U.S.C. § 1589 et seq.). "The TVPA was enacted after Congress took a substantial amount of evidence on the traffic in the sexual services of women based on importing women from around the world by force or fraud." *Todd*, 627 F.3d at 333 (citing TVPA, Pub. L. No. 106-386, 114 Stat. 1464, 1466 (2000)). The purposes section of the TVPA provides:

> Existing legislation and law enforcement in the United States and other countries are inadequate to deter trafficking and bring traffickers to justice, failing to reflect the gravity of the offenses involved. No comprehensive law exists in the United States that penalizes the range of offenses involved in the trafficking scheme. Instead, even the most brutal instances of trafficking in the sex industry are often punished under laws that also apply to lesser offenses, so that traffickers typically escape deserved punishment.

Pub. L. No. 106-386, § 102(14), 114 Stat. 1464, 1467.

These purposes indicate that the TVPA was intended to thwart high-level trafficking activities. The findings and purposes of the TVPA reference importing and exporting women and children in and out of different countries and moving them up and down the trafficking hierarchy. Pub. L. No. 106-386, § 102(b)(1)-(5). Comments by former Minnesota Senator Paul Wellstone, one of the main proponents of the TVPA, also illustrate that the act was meant to

13

punish those who profit from the sale of human beings as a source of income. Docket 53 at 10-11. Most persuasive was Senator Wellstone's reference to "[t]raffickers . . . tak[ing] advantage of the demand in our country and others for cheap, unprotected labor. For the traffickers, the sale of human beings is a highly profitable, low-risk enterprise . . . Trafficking has become a major source of new income for criminal rings." *Id.* (citing 146 Cong. Rec. S10164-02, 2000 WL 1509753). This history supports Bonestroo's argument that the TVPA intends to reach the supply side of the trafficking universe.

Prior to the enactment of the TVPA, at least two federal statutes penalized the purchaser of sex with a minor. 18 U.S.C. § 2423(b) makes it illegal for a person to "travel[ ] in interstate commerce . . . for the purpose of engaging in any illicit sexual conduct with another person . . . ." Additionally, 18 U.S.C. § 2422(b) punishes those who "using . . . any facility or means of interstate or foreign commerce . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so . . . ." The TVPA's legislative findings suggested that existing legislation did not properly punish sex traffickers. There were already two statutes that punish purchasers, like Bonestroo. This indicates that purchasers or those with similar conduct were not included as sex traffickers under the TVPA. The legislative history is clear, therefore, that

the TVPA was meant to apply to the suppliers who are most directly and deeply involved in the trafficking rings themselves.

The government cited legislative history that states: "the [TVPA] contains . . . reforms to the United States criminal law to provide severe punishment, up to life imprisonment in the worst cases, for criminals who *buy and sell* human beings . . . [t]his includes people who recruit, transport, purchase, and sell these innocent victims . . . ." Docket 59 at 7 (citing 146 Cong. Rec. H. 2675 (daily ed. May 9, 2000)). The TVPA is described as a "comprehensive scheme to 'penalize the full range of offenses involved in elaborate trafficking networks.' " *Id.* (citing 146 Cong. Rec. S 2729 (daily ed. April 13, 2000)). Finally, the government noted that the TVPA's history indicated that those "involved in trafficking, from the lowest to the highest levels, should not expect to go unpunished in the United States . . . ." *Id.* (quoting 146 Cong. Rec. S2617 (daily ed. April 12, 2000)).

The government argues that the language referring to those who buy human beings and the references to low-level players in the trafficking scheme proves that Congress intended to reach defendants like Bonestroo with § 1591. There is a distinction, however, between those who buy or sell human beings to gain pecuniary benefits versus those who purchase sex acts with minors to satisfy their prurient interests. For instance, the TVPA's legislative purposes state that "[t]raffickers also *buy* children from poor families and *sell*

15

them into prostitution[.]" Pub. L. No. 106-386, § 102(b)(4) (emphasis added). This indicates that the government's reliance on the word "buy" is misplaced because this language clearly does not refer to johns. The government also cited different legislative history surrounding the reauthorizations and amendments to the TVPA, but none of that legislative history supports that Congress intended to target purchasers of commercial sex acts through § 1591.[3]

The overwhelming thrust of the legislative history supports the conclusion that the TVPA and § 1591 were enacted to punish members of sex trafficking rings and those who treat human beings as commodities to be bought and sold, not those who temporarily use children to satisfy their prurient interests. *See Jungers*, 2011 WL 6046495, at *4 ("The legislative history cited by the parties overwhelmingly indicates that § 1591 was intended for prosecution of traffickers, those who buy and sell human beings for use in prostitution enterprises, rather than potential customers whose illegal activities were already penalized by other statutes."). The court finds it telling that the purposes section of the TVPA indicated that it was meant to fill a gap

---

[3] As Bonestroo correctly notes, the majority of the government's references to the TVPA addressing "the demand" side of the child prostitution sphere were comments that addressed a separate piece of legislation, the End Demand for Sex Trafficking Act of 2005, H.R. 2012. *See Jungers*, 2011 WL 6046495, at *4 n.2 (noting the government's use of legislative intent that did not pertain to § 1591).

in the law and to strengthen the punishment for those who traffic humans. Because statutes already existed that criminalized the purchase of a commercial sex act from a minor, the TVPA was not intended to punish people like Bonestroo. Had Congress intended that result it would have explicitly expressed that intention.

## CONCLUSION

There was insufficient evidence to establish that §§ 1591 and 1594(a) applied to the actions of Bonestroo. Therefore, no reasonable jury could have found Bonestroo guilty of that offense beyond a reasonable doubt, and his conviction must be overturned. Accordingly, Bonestroo is acquitted of his conviction under 18 U.S.C. §§ 1591 and 1594(a). It is

ORDERED that defendant's motion for a judgment of acquittal (Docket 53) is granted.

IT IS FURTHER ORDERED that Bonestroo is acquitted, discharged from confinement, and any bond exonerated.

Dated January 4, 2012.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE